# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BENJAMIN FELDMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0253-AGB |
| | ) | |
| YIDL TRUST, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING RESPONDENT'S MOTION FOR RELIEF FROM THE COURT'S ENTRY OF JUDGMENT

WHEREAS:

A.     On March 5, 2018, the court granted petitioner Benjamin Feldman's motion for summary judgment under Court of Chancery Rule 56 for dissolution of Royston, Inc. ("Royston" or the "Company") under 8 *Del. C.* § 273 and appointed a Receiver to dissolve the Company.[1]

B.     On April 6, 2018, the Receiver submitted a plan of dissolution for Royston (the "Plan"), which the court approved on April 9, 2018.[2]

---

[1] Dkt. 39 & 40. Because a party (Benjamin Feldman) and relevant non-parties (Howard, Roberta, and Andrew Feldman) share a surname, I refer to them by their first names. No disrespect is intended.

[2] Dkt. 50 & 51.

C.    In a letter dated April 17, 2018, Howard Feldman, a trustee of respondent YIDL Trust (the "Trust"), requested that the court "dismiss the case and . . . direct [the Receiver] to stop any actions" due to "two new revelations."[3]  First, Howard argued for the first time that the estate of his deceased son, Andrew Feldman, legally owns 100% of Royston's stock, since the stock was never properly transferred from Andrew's estate to "[his] and [his] wife's name."[4]  Thus, according to Howard, he and Roberta never had the ability to transfer subsequently 50% of the Company's stock to Benjamin.  Second, Howard alerted the court that the Company "is in a forfeited condition" and thus "cannot do any business or operate as a[n] active corporation."[5]  Howard appears to argue that the fact that Royston is in forfeiture precludes the Receiver from effectuating the Plan.

---

[3] Dkt. 54.

[4] Dkt. 54.  In referring to the title of Royston stock not being transferred to Howard and Roberta's names, I assume Howard is referring to the second link in the following chain of transfers of Royston stock from (1) the Andrew Feldman Living Trust, to (2) Howard and Roberta individually, and (3) ultimately to the Trust (*i.e.*, the YIDL Trust).

According to the Trust's Answer, Howard and Roberta are the trustees of the Trust, which was formed in California on March 9, 2012, became the record owner of 100% of the outstanding shares of Royston on March 15, 2012, and thereafter transferred 50% of the shares of Royston to Benjamin while retaining the remaining 50% of Royston's shares. Answer ¶¶ 1, 4-5, 8 (Dkt. 6).  Andrew died on May 9, 2009, two years and ten months before the Trust was formed.  Dkt. 54 (Certificate of Death).

[5] Dkt. 54. According to the Receiver, the event of forfeiture concerns the failure to appoint a registered agent.  Dkt. 52 at 2 & Ex. A.

2

D.     On April 26, 2018, Benjamin opposed Howard's request that the court modify its decision and order appointing a receiver to wind-up the affairs of Royston.[6]

NOW THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, this 4th day of May, 2018, as follows:

1.     Although neither of the parties referred to Court of Chancery Rule 60 in their recent submissions, this rule provides the appropriate framework to consider Howard's April 17, 2018 request, because he seeks relief from the court's order granting summary judgment in Benjamin's favor on March 5, 2018 and the implementing order for the Plan entered on April 9, 2018.

2.     Under Court of Chancery Rule 60(b), "the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" for certain enumerated reasons:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud . . ., misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

---

[6] Dkt. 56.

Howard's request potentially implicates the second and sixth grounds for relief in Rule 60(b).

3.     *First*, Howard suggests that the information in his letter regarding the stock transfer and the Company's corporate status is newly discovered evidence.  To succeed under Rule 60(b)(2), the moving party must show that:

> [1] the newly discovered evidence has come to his knowledge since the trial; [2] that it could not, *in the exercise of reasonable diligence, have been discovered for use at the trial*; [3] that it is so material and relevant that it will probably change the result if a new trial is granted; [4] that it is not merely cumulative or impeaching in character; *and* [5] that it is reasonably possible that the evidence will be produced at the trial.[7]

Here, Howard fails to offer any reason why he could not, through the exercise of reasonable diligence, have discovered the evidence submitted with his April 17 letter concerning the purported "two new revelations" before the court ruled on Benjamin's motion for summary judgment.

4.     With respect to the first matter, the record reflects that Andrew passed away about nine years ago, in May 2009,[8] and that Howard was able to properly handle the transfer of certain other assets from Andrew's estate.[9]  Howard provides no reason why he did not previously raise the issue of a purported defect in the stock

---

[7] *Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *5 (Del. Ch. Feb. 4, 2011) (Strine, V.C.) (emphasis in original and citation omitted).

[8] Andrew Feldman Death Certificate (Dkt. 55).

[9] Howard Feldman Letter (Apr. 17, 2018) (Dkt. 54) (discussing the transfer and re-titling of Andrew's house after his death).

4

transfer from Andrew's estate to the Trust so as to call into question the legitimacy of the subsequent transfer of 50% of the Company's stock from the Trust to Benjamin.

5.      With respect to the second matter, Howard and his attorney originally acquired a registered agent for Royston, so Howard and/or his attorney presumably were aware of any notifications from Royston's registered agent that payment was due for its services or any notices from the Delaware Secretary of State indicating that there was or would be any change to the Company's corporate status.[10]

6.      In sum, the record supports the conclusion that Howard could have discovered the evidence he now offers well before the court's ruling on Benjamin's motion for summary judgment if he had exercised even a minimum level of reasonable diligence. Accordingly, no grounds have been identified to warrant relief under Rule 60(b)(2).

7.      *Second*, for a motion pursuant to Rule 60(b)(6), a "catchall provision,"[11] the "standard generally applicable is that the moving party must show an

---

[10] *See* Benjamin Feldman Aff. ¶ 3 ("YIDL Trust's trustee, Howard Feldman . . . and his attorney acquired a registered agent for Royston.") (Dkt. 56).

[11] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 634 n.9 (Del. 2001).

'extraordinary situation or circumstances,'" which requires "*extreme hardship where relief would not be available under any of the other provisions.*"[12]

8.     Howard has raised a concern, albeit belatedly, over the true ownership of Royston. In its Answer, the Trust admitted that the Trust and Benjamin are each 50% stockholders of the Company.[13] Now, however, Howard argues that Royston only has one stockholder, Andrew's estate, so the court would not have the power to order Royston's dissolution under 8 *Del. C.* § 273.[14]

9.     Putting aside that this contention squarely contradicts a series of facts that the Trust judicially admitted,[15] the contention fails to provide a basis for relief under Rule 60(b)(6) for the independent reason that Benjamin qualifies as a

---

[12] *Scureman v. Judge*, 1998 WL 409153, at *5 (Del. Ch. June 26, 1998) (emphasis in original and citations omitted).

[13] Answer ¶ 1.

[14] In a second letter he filed with the court, dated April 25, 2018, Howard suggests that title to the Company's primary asset, the M/V Nervous Wreck (the "Boat"), is held by Key Bank. Dkt. 57. The Trust, however, previously admitted that the Company's "principal and only asset is a boat named M/V Nervous Wreck." Answer ¶ 3. Furthermore, the documents that Howard provided the court with his April 25 letter do not show that Key Bank holds title to the Boat. Rather, these documents show that Andrew and Royston financed the purchase of the Boat with a loan from Dimon Financial Services, Inc., dated May 26, 2004, and that Dimon Financial Services assigned to Key Bank on June 7, 2004, "all of the fees and payment due and owing under" the loan to Andrew and Royston. Dkt. 57. There is no indication in these documents that Andrew and Royston transferred the Boat's title to Key Bank.

[15] *See* n.4, *supra.*

6

"protected purchaser" of Royston's stock such that he obtained that "security free of any adverse claim."[16]

10.    Under the Delaware Uniform Commercial Code,[17] a protected purchaser means "a purchaser of a certificated or uncertificated security, or interest therein, who: (1) gives value; (2) does not have notice of any adverse claims to the security; and (3) obtains control of the certificated or uncertificated security."[18]

11.    All three elements are met here. Benjamin qualifies as a purchaser who gave value in exchange for Royston's shares.[19] The Company's January 6, 2016 meeting minutes—signed by Howard, Roberta, and Benjamin—indicate that Howard and Roberta transferred 500 shares to Benjamin "in consideration" for "various expenses [incurred] in connection with the Corporation's principal asset, M/V Nervous Wreck."[20]

---

[16] 6 *Del. C.* § 8-303.

[17] The Trust was formed in California and it appears that Benjamin, Howard, and Roberta all reside in California. *See, e.g.*, Verification of Pet'r Benjamin Feldman to Verified Pet. for Dissolution of Royston, Inc. Pursuant to 8 *Del. C.* § 273 (Dkt. 1); Howard Feldman Letter (Jan. 17, 2018) (Dkt. 22). Even if California law were to apply to the transfer of Royston stock to Benjamin, the applicable California law is substantively the same as the applicable Delaware law. *Compare* Cal. Com. Code § 8303, *with* 6 *Del. C.* § 8-303.

[18] *Id.* § 8-303(a).

[19] "Purchaser" and "value" are broadly-defined terms. *See id.* §§ 1-201(30), 1-204.

[20] Dkt. 56 Ex. B at 2.

12. "Adverse claim" means "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset."[21] Here, it stands to reason that Benjamin did not have notice of an adverse claim[22] to his shares of Royston stock (*i.e.*, the purported ownership of 100% of the Company by Andrew's estate) given that the Trust asserts that it only recently became aware of this "revelation," and Howard and Roberta (and not Benjamin) were the trustees of Andrew's estate.[23]

13. Finally, given Benjamin's receipt of a stock certificate for 500 shares of Royston, he obtained the requisite control of the shares.[24] Because Benjamin qualifies as a protected purchaser, he holds his 50% stake of Royston free of any adverse claims. For this reason, and because of the Trust's previous judicial admissions that the Trust and Benjamin each held 50% of Royston's stock, relief from the court's prior orders under Rule 60(b)(6) is not warranted.[25]

---

[21] *Id.* § 8-102(a)(1).

[22] *See* 6 *Del. C.* § 8-105(a) (providing definition of notice of adverse claim).

[23] Howard Feldman Letter (Apr. 17, 2018) & Andrew Feldman Living Trust (Dkt. 54).

[24] *See* Dkt. 56 Ex. C (stock certificate); 6 *Del. C.* §§ 8-106(b), 8-301(b) (defining control).

[25] Given that Benjamin qualifies as a protected purchaser owning 50% of Royston's stock, it is irrelevant whether the other 50% is owned by the Trust (according to the Answer) or the Andrew Feldman Living Trust (according to Howard's letter dated April 17, 2018). In either case, the requirements of 8 *Del. C.* § 273 are met such that dissolution of the Company is appropriate.

14. For the foregoing reasons, the motion for relief from the court's March 5, 2018 decision and its orders of March 5, 2018 and April 9, 2018 is **DENIED**. Dissolution of the Company shall proceed in accordance with the Plan. To the extent that the Company is not in good standing with the State of Delaware, the Receiver is directed to take the necessary steps to correct that situation in connection with the implementation of the Plan.

_____
Chancellor